Filed 1/11/23  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077416 |
| v. | (Super.Ct.No. FWV1003124) |
| EDUARDO HERNANDEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Daniel W. Detienne, Judge.  Affirmed.

Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Adrian R. Contreras, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

In 2010, defendant and appellant Eduardo Hernandez pled guilty to carrying a concealed weapon that was stolen (former Pen. Code,[1] § 12025, subd. (a),[2] count 1) and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a), count 2), both as misdemeanors (Pen. Code, § 17, subd. (b)).  In 2020, he filed a motion pursuant to Penal Code section 1473.7 to withdraw his plea and vacate his convictions on the grounds that his attorney failed to investigate the immigration consequences of his plea, failed to inform him of the actual immigration consequences of his plea, and failed to seek an immigration-safe plea.  The trial court denied the motion.

Defendant appeals, contending that he did not understand the immigration consequences of his plea.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Police officers responded to a report of someone hearing gunshots in a residential neighborhood in Ontario.  They searched the neighborhood and found defendant standing next to a fence.  They asked him to take his hands out of his pockets and approach them.

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

[2] Effective in 2012, the Legislature renumbered this statute as section 25400.

[3] The factual background is taken from the police report.  We note the minute order only indicates the court found that defendant's plea was "based on fact," but did not state a specific factual basis for the plea.  We further note the clerk of the San Bernardino County Court was unable to ascertain the identity of the court reporter at the plea hearing; thus, the reporter's transcript from the plea hearing was not available.

Defendant walked toward the officers, but momentarily sidestepped and hid behind a tree, removed something from his pants, and then resumed approaching the officers. The officers detained him. They searched near the tree and found a handgun with a magazine inside of it. Even though the ground was wet from the prior rain, the gun was mostly dry. The officers arrested defendant and transported him to the police station. Upon booking him, an officer took everything out of defendant's pockets. As the officer grabbed defendant's wallet, he felt something fall out of it. The officer reached back into his pocket and retrieved a plastic baggy that contained six grams of methamphetamine. A records search revealed the gun was a .38-caliber semiautomatic firearm that had been reported stolen over 10 years earlier.

On December 12, 2010, defendant was charged by felony complaint with carrying a concealed weapon that was stolen (former Pen. Code, § 12025, subd. (a), count 1) and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a), count 2).

On December 28, 2010, defendant entered a plea agreement and pled guilty to counts 1 and 2, which were reduced to misdemeanors pursuant to section 17, subdivision (b). Defendant initialed the box next to the statement: "I understand that if I am not a United States citizen, my plea could result in my deportation, exclusion from future admission to the United States, or denial of naturalization under the laws of the United States." Defendant also initialed the box next to the statement: "I have personally initialed each of the foregoing boxes and I understand each and every one of the rights outlined, and I hereby waive or give up each of them in order to enter my guilty/nolo contendere plea to the above charge(s) and admission(s). No one has used any force or

3

threat against me or anyone close to me in order to make me enter this plea. I am not under the influence of any substance that impacts my ability to understand or waive my rights. I am entering this plea or authorizing my attorney to enter this plea on my behalf either because I am guilty and for no other reason or because the plea is result of plea-bargaining." Defendant signed his name on the plea form underneath that statement. He also signed his name under a paragraph which stated, in part: "I consent and agree to the terms of the PLEA BARGAIN and to the entry of same in the minutes of said court, and acknowledge receipt of a copy of this document, . . ." An interpreter signed the agreement, under penalty of perjury, stating that she read the entire agreement to defendant in Spanish.

Defendant's plea counsel also signed the form beneath the statement: "I am the attorney for the defendant, and I have explained to the defendant each of his/her rights, the nature of and defenses to the charge(s), and the consequences of his/her guilty/nolo contendere plea and admission. I personally observed him/her to read, initial, date and sign this document. I consent to the entry of his/her plea and admission." The judge signed the findings, which stated: "1. Defendant and/or his/her attorney appeared in open Court and entered this plea and admission. [¶] 2. Defendant understands the nature of the charge(s) and the consequences of his/her plea and admission. [¶] 3. Defendant has knowingly, intelligently, expressly and voluntarily waived the rights as set forth above. [¶] 4. There is a factual and/or plea bargain basis for the plea."

At the plea hearing on December 28, 2010, defendant pled guilty to counts 1 and 2 as misdemeanors. The minute order indicates the court found that defendant understood

4

the charges, the possible penalties, the rights against self-incrimination, to confront and cross-examine witnesses, to a public and speedy trial, to a jury trial, to have an attorney present at all stages of the proceedings, and "to the Public Defender if indigent and to the compulsory process of the court to subpoena witnesses." The court also found the plea was based on fact. Pursuant to the plea agreement, the court placed defendant on probation for three years under specified terms, including 97 days in county jail.

On March 19, 2021, defendant filed a motion to vacate his convictions pursuant to section 1473.7. He asserted that he qualified for relief because his plea counsel rendered ineffective assistance of counsel (IAC) since he failed to investigate and negotiate an immigration-neutral plea, and improperly advised him of the immigration consequences of his plea. Defendant further argued that even if his counsel's performance did not rise to the level of IAC, he was still entitled to vacate his convictions because "counsel's performance resulted in his failure to meaningfully understand, defend against, or knowingly accept the immigration consequences of a conviction." Defendant claimed he had no idea his convictions subjected him to removal and that remaining in the United States was very important to him since his family lived here, and he had been here for years. He claimed "he did not understand much of what was told to him in court" because he had just graduated from high school, he had cognitive limitations, there was a language barrier, and because the information given to him was complex. Defendant further argued he was prejudiced by his counsel's representation since he would not have accepted a plea to a violation of Health and Safety Code section 11377 had he known it would lead to deportation, and had he known, he "would have made a different choice

5

and even agreed to a longer jail sentence." Defendant stated that following his convictions, he was ordered removed on March 21, 2011. However, on January 6, 2016, the Honorable Judge Jesus G. Bernal of the United States District Court for the Central District of California found that he was unlawfully ordered removed.

In support of the motion, defendant submitted a declaration stating he had lived in the United States since he was seven years old, and it was just him, his mother, and his brother; his stepfather came a few months later. He said his stepfather and mother were together when they were in Mexico, and the stepfather was very abusive toward him and his mother. His stepfather often let him starve and would leave him bruised from beating him. Defendant said he was sexually abused and raped by his stepfather's brother several times in Mexico. Defendant attended elementary school, middle school, and graduated from high school here, and he received special education services during his school years due to a learning disability. While in middle school, he and his girlfriend at the time had a son. Although he and his girlfriend separated, defendant "remained supportive" of his son, who was 14 years old.

Defendant stated that in 2010, he was arrested for carrying a concealed weapon and possession of a controlled substance and pled not guilty. The court appointed him a public defender, and he pled guilty based on his attorney's advice. Defendant stated his immigration status was never discussed, he was never asked about it, his attorney never informed him of any potential consequences his guilty plea would have on his legal status, and he was never presented with any possible alternatives or informed of immigration-neutral pleas.

6

Defendant attached his plea counsel's case file notes to his motion. His counsel made a handwritten notation on the notes, stating: "[Defendant] says previously deported and undocumented."

Defendant stated that on or around 2013, he was deported and that when he returned to Mexico, he was kidnapped, beaten, and sexually assaulted. He was eventually let go but was threatened that if his kidnappers ever saw him again, they would kill him. Defendant further stated that around 2013, he met and married his current wife, who is a United States citizen. They had a daughter, who was three years old.

The prosecutor filed an opposition to defendant's motion to vacate. He made several arguments, including that the documents from the time of defendant's plea show that he was made fully aware that his plea would make him deportable. The prosecutor noted that since 2010, defendant had been charged with various other criminal offenses. In 2015, he was convicted of illegally entering the United States after deportation, and the documents from that case showed that he had been deported several times. The prosecution further argued that defendant did not include a completed acknowledgment form from his plea counsel or show that his counsel was personally served; as such, his counsel could not be found ineffective. Furthermore, plea counsel's notes made it clear that he was aware of defendant's immigration status and that his immigration status was discussed. The prosecutor argued that there was no prejudice since defendant had no legal status, which is what made him deportable, rather than his convictions and his other

7

criminal convictions would have made him deportable sooner or later. Defendant filed a reply brief to oppose the prosecutor's arguments.

On July 9, 2021, the court held a hearing on the motion. The court stated that it reviewed the moving and opposing papers, and it received into evidence the attachments, including defendant's declaration and the police report. Defendant testified on his own behalf. He testified that he entered the United States in 1999, when he was seven years old. He lived in Ontario with his mother, brother, and stepfather. Defendant said he went to school here and received special education because he had problems reading and understanding what happened in class. In 2007 when he was 14 years old, his girlfriend gave birth to their son.

Defendant testified that he got married in 2013 to his current wife, and they had a daughter. That same year, defendant was also deported. He testified that in Mexico, he was kidnapped, beaten, and sexually assaulted. Then he returned to the United States. Defendant testified that in 2015, he was convicted in federal court of illegally reentering the United States after being deported. In 2019, he admitted felony evading the police and reckless driving with alcohol.

Regarding the instant case, defendant said he did not recall speaking with defense counsel about his immigration status. He denied knowing that his conviction would be considered an aggravated felony for immigration purposes. Defendant said he did not recall defense counsel ever telling him about immigration-safe pleas. Defendant testified that had he known he was pleading to an aggravated felony, he would not have accepted the plea agreement and would have continued to fight his case or he would have served

8

more time to avoid being deported.[4]  Defendant said that in 2010, all his family was in the United States, including his son, and that he had no ties to Mexico.  He testified that he had been deported many times, and he kept coming back to the United States because his family was here.  On cross-examination, defendant testified that he was undocumented, that he had been deported 11 or 12 times, and he was currently in deportation proceedings due to his undocumented status.

The court found that defense counsel's case file notes contradicted defendant's testimony that he did not recall discussing immigration consequences with his counsel, since the notes showed the issue came up.  The court found the notes did not affirmatively prove that defense counsel either misadvised defendant about immigration consequences or failed to advise him at all about those consequences.  The court stated it needed some kind of objective evidence of that.  It then noted that defendant initialed the box on the plea agreement regarding the adverse immigration consequences.  The court found defendant likely would have been convicted had he gone to trial because the police found the drugs on his person, in his wallet.  It also found there was no evidence of an immigration-safe disposition that was available to defendant.  The court concluded that it did not see any error or prejudicial error and denied the motion to vacate.

---

[4] Pursuant to the plea agreement, defendant's convictions were reduced to misdemeanors under section 17, subdivision (b).  "Under the Immigration and Nationality Act (8 U.S.C. § 1101 et seq.), '[a]ny alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable' [citation], and any such deportable alien 'shall, upon the order of the Attorney General, be removed' [citation]."  (*People v. Patterson* (2017) 2 Cal.5th 885, 895.)

DISCUSSION

## The Trial Court Properly Denied Defendant's Motion

Defendant argues the court's denial of the motion to vacate his conviction should be reversed. He expressly states he is not claiming IAC, but contends the evidence he presented showed that he, through his attorney's error or his own error, failed to understand the consequence of his plea was mandatory deportation. Defendant claims he did not understand the immigration consequences of his plea since he was 18 years old with a learning disability, at the time of the plea. He claims he was prejudiced since, if he had been advised about or understood the immigration consequences of his plea, he would have rejected the prosecution's offer since he came to the United States when he was seven, all his family was here, he had a son born here, he had no ties in Mexico, and he needed assistance given his cognitive disabilities. We conclude the court properly denied the motion.

A. *Standard of Review*

Our Supreme Court recently determined the standard of review for section 1473.7 motion proceedings. In *People v. Vivar* (2021) 11 Cal.5th 510, 526 (*Vivar*), the court endorsed the independent standard of review. Under independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law. (*Id.* at p. 527.) When courts engage in independent review, they should be mindful that independent review is not the equivalent of de novo review. (*Ibid.*) An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. (*Ibid.*) Factual determinations that are based on the credibility of witnesses

the superior court heard and observed are entitled to particular deference, even though courts reviewing such claims generally may reach a different conclusion from the trial court on an independent examination of the evidence, even where the evidence is conflicting. (*Id.* at pp. 527-528.) In other words, appellate courts should give particular deference to factual findings based on the trial court's personal observations of witnesses. (*Ibid.*) However, where the facts derive entirely from written declarations and other documents, "there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id.* at p. 528, fn. omitted.)

B. *Defendant Has Failed to Establish He is Entitled to Relief*

Section 1473.7, which became effective on January 1, 2017 (Stats. 2016, ch. 739), provides that a person who is no longer imprisoned may move to vacate a judgment if the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).) Thus, a defendant is required to demonstrate that he suffered prejudicial error. (*Ibid.*) "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (§ 1473.7, subd. (e)(1).)

"Ineffective assistance of counsel that damages a defendant's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a guilty plea, if established by a preponderance of the evidence, is the type of error that entitles the defendant to relief under section 1473.7." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 75.) However, "[a] finding of legal invalidity, may, but need not include a finding of ineffective assistance of counsel." (§ 1473.7, subd. (a)(1).) In other words, a superior court can make a finding of legal invalidity "if the defendant simply proves by a preponderance of the evidence a 'prejudicial error damaging the moving party's ability to *meaningfully understand*, defend against, or *knowingly accept* the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.' " (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871 (*Mejia*).)

"[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at pp. 529-530.)

12

1. *Defendant Failed to Establish Error on His Counsel's Part or His Own Misunderstanding*

Defendant failed to meet his burden of establishing by a preponderance of the evidence that any prejudicial error on his counsel's part damaged his ability to understand, defend against, or knowingly accept the immigration consequences of his plea. (§ 1473, subds. (a)(1) & (e)(1).) We note the ease with which a defendant may claim his counsel erred. (See *In re Alvernaz* (1992) 2 Cal.4th 924, 938.) However, "[a]n allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223-224.) Thus, defendant's claims require "corroboration and objective evidence because a declaration by defendant is suspect by itself." (*Id*. at p. 224.) "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Lee v. United States* (2017) 137 S.Ct. 1958, 1967; see *Mejia*, *supra*, 36 Cal.App.5th at p. 872 ["[i]n a postconviction setting, courts should not simply accept a defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences.' "].)

Defendant has presented no such objective, corroborating evidence here. The only relevant evidence he offers is his self-serving declaration and testimony. Generally, self-serving declarations lack trustworthiness. (*People v. Duarte* (2000) 24 Cal.4th 603, 611.)

13

In other words, we are not bound to give full credence to the statements in defendant's declaration because of his obvious interest in the outcome of the proceeding. (See *People v. Beck* (1961) 188 Cal.App.2d 549, 553.) We note that defendant offered no contemporaneous evidence such as declaration and/or testimony by his plea counsel. (See *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664 (*Abdelsalam*).) In his reply brief, defendant claims "it is unrealistic to believe that an attorney in a high volume public defender office would remember a fleeting and remote proceeding." However, as respondent points out, public defenders have testified about older plea discussions/agreements. (See *People v. Rodriguez* (2021) 60 Cal.App.5th 995, 998-1001.) Moreover, if defense counsel did not remember defendant's case, he could have at least testified to his custom and practice in reaching plea agreements in 2010. (*Id*. at p. 1001.) Defendant had the burden of proof, and he presented no evidence that his plea counsel was unavailable. (§ 1473.7, subd. (e)(1).)

Furthermore, we find defendant's statements in his declaration that his immigration status was never discussed, and he was never asked about it, to be not credible. The evidence showed that plea counsel made a handwritten notation in his case file notes, stating: "[Defendant] says previously deported and undocumented." Further, that notation appears on the page below the notation for defendant's arraignment and above where counsel wrote the terms of the plea agreement reached. It is reasonable to infer from this evidence that defense counsel was aware of defendant's immigration status and spoke to defendant about defendant's immigration status before he pled guilty.

14

Moreover, defendant's claim on appeal that his declaration and testimony "establish the lack of information about immigration consequences of his plea damaged his ability to meaningfully understand and knowingly accept the consequences of this plea" is belied by the record. The evidence shows he was informed about the consequences of his plea and understood them. Defendant initialed the box on the written plea agreement next to the statement: "I understand that if I am not a United States citizen, my plea could result in my deportation, exclusion from future admission to the United States, or denial of naturalization under the laws of the United States." Defendant also initialed the box next to the statement on the plea agreement: "I have personally initialed each of the foregoing boxes and *I understand* each and every one of the rights outlined, and I hereby waive or give up each of them in order to enter my guilty/nolo contendere plea to the above charge(s) and admission(s) . . . I am entering this plea or authorizing my attorney to enter this plea on my behalf either because I am guilty and for no other reason or because the plea is result of plea-bargaining." (Italics added.) Defendant signed his name on the plea form underneath that statement. An interpreter also signed the agreement, under penalty of perjury, stating that she read the entire agreement to defendant in Spanish.

Furthermore, defense counsel signed the written plea agreement stating that he explained defendant's rights to him, and explained the nature of each charge, any possible defenses, and the effects and consequences of the plea. The trial court also signed the written plea agreement, finding defendant knowingly and intelligently waived

15

and gave up his rights, with an understanding of the nature and consequence of the plea.[5]

Therefore, not only has defendant failed to present evidence to corroborate his claims that the immigration consequences of his plea were never discussed and he did not understand them, the evidence demonstrates the opposite—that defense counsel did explain the immigration consequences of the plea and defendant understood them.

Defendant additionally argues that the advisory on the plea form that the plea "could result in" deportation was inadequate to advise him that this plea rendered him automatically deportable. Defendant is correct that under the legal authorities in effect at the time he entered his plea, his counsel was required to advise him of the specific immigration consequences of his plea beyond the plea form's permissive language.

In *Padilla v. Kentucky* (2010) 559 U.S. 356, the United States Supreme Court held that criminal defense attorneys have an affirmative duty to advise their clients of the potential deportation consequences of any plea. (*Id*. at p. 374. ["[C]ounsel must inform her client whether his plea carries a risk of deportation."].) The court acknowledged that immigration law can be complex and that "[w]hen the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration

---

[5] We note defendant's claim that the judge's signature merely shows the judge was attesting to "a perception that [defendant] *seemed to understand* what was going on." Defendant states he "does not take issue with the fact that it may have appeared to the judge in 2010 that he understood the plea; but *what* he understood at the time is the issue." However, defendant has only presented his self-serving testimony of *what* he understood at the time. We give deference to what the judge perceived, based on his personal observation of defendant at the plea hearing. (See *Vivar*, *supra*, 11 Cal.5th at p. 527.)

consequences." (*Id*. at p. 369, fn. omitted.)  "But when . . . federal immigration law specifies in 'succinct, clear, and explicit' terms that a criminal conviction will result in deportability . . . a criminal defense attorney must accurately advise his or her client of that consequence before the client enters a guilty plea."  (*People v. Patterson* (2017) 2 Cal.5th 885, 898, citing *Padilla v. Kentucky*, at pp. 368-369.)

Here, the federal law was clear that defendant's plea to possession of methamphetamine would subject him to mandatory deportation.[6]  However, by failing to attach a declaration of plea counsel or some other corroborating evidence, defendant has failed to demonstrate error under *Padilla*.

Defendant claims that because the reporter's transcript of the plea colloquy is unavailable, he "is barred from objective evidence that could demonstrate that" his counsel did not advise him of the immigration consequences of his plea.  However, the unavailability of the reporter's transcript does not relieve defendant of his burden of proof.  (§ 1437.7, subd. (e)(1).)  At the same time, defendant contends "the circumstances of the plea" provide objective evidence that his counsel did not explain the immigration consequences to him, in that his counsel only had a few hours to "prenegotiate a plea, interview [him], determine the importance to [him] of staying in this country, research potential and actual immigration consequences of the proffered plea, renegotiate an immigration-neutral plea, explain [his] options, the immigration consequences, and plea form, and answer [his] questions."  However, even if his counsel had a limited amount of

---

[6] Defendant pleaded guilty to possession of methamphetamine, which was a violation of a law relating to a controlled substance.  (8 U.S.C. § 1227(a)(2)(B)(i).)

time with him, such circumstance does not establish that counsel did not discuss the immigration consequences of the plea with him.

Defendant further claims he was diagnosed with a learning disability and had "a reduced ability to comprehend the criminal justice system." However, he presented no objective evidence to corroborate such claim. Although he did present evidence that he had a learning disability and qualified for special education services, such evidence showed that he struggled academically, in part because he was "still acquiring English language skills." In his reply brief, defendant points out that he had delays in reading and writing in both Spanish and English. However, the evidence he cites is a report from when he was in second grade, in 2000. The evidence did not show defendant did not understand the consequences of his plea in 2010.

2. *Defendant Has Failed to Establish Prejudice*

Even if the advisory form was inadequate or defendant did not understand the consequences of his plea, he has failed to establish that he was prejudiced. Defendant claims he was prejudiced since he would not have pled guilty if he had understood he was subject to mandatory deportation. He asserts that he would not have taken the plea since he came to the United States at a young age, was educated here, had a son born in the United States, his family was here and he needed support due to his learning disability, and he had no ties to Mexico. Defendant's declaration contains the only direct evidence presented as to whether he would have taken the plea had he been aware of the immigration consequences. However, " 'a defendant's self-serving statement—after trial, conviction, and sentence—that with competent advice he or she *would* have accepted [or

18

rejected] a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence.' " (*People v. Bravo* (2020) 58 Cal.App.5th 1161, 1171, overruled in part on other grounds, as stated in *Vivar*, *supra*, 11 Cal.5th at p. 526.) We note defendant stated in his declaration that remaining in the United States was "extremely important" to him, but he did not state that he told his plea counsel his priority was to remain here in order for his counsel to try to mitigate the consequences of the plea.

Defendant did state in his declaration that he would not have pled guilty if he knew he was going to be deported[7] and he would have tried to negotiate another deal or gone to trial, and he would have been willing to accept more jail time. However, defendant failed to present evidence that at the time of the plea, he "had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at p. 530.) He offered an expert declaration opining that alternative, nondeportable dispositions could have been negotiated. However, there was no indication in the record that the prosecution was willing to agree to an immigration-safe plea. (*People v. Perez* (2018) 19 Cal.App.5th 818, 830 (*Perez*); *Abdelsalam*, *supra*, 73 Cal.App.5th at p. 665.) Similarly, there is no suggestion that defendant's counsel did not attempt to negotiate such a disposition. (*Perez*, at p. 830.)

In addition, the evidence against defendant was strong. It showed that the police responded to a call of gunshots and observed defendant in the area. When the police told

---

[7] However, we note that defendant testified he had been deported 11 or 12 times.

19

him to walk over to them, he disposed of a gun behind a tree on his way over.  The police also retrieved a plastic baggy that contained six grams of methamphetamine from his person.  Defendant was charged with felony carrying of a concealed weapon that was stolen (former Pen. Code, § 12025, subd. (a)) and felony possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), and he faced up to three years eight months in county jail.  (see Pen. Code, § 25400; Health & Saf. Code, § 11377, subd. (a).) Yet, pursuant to the plea agreement, his charges were reduced to misdemeanors, and he was placed on probation, with only 97 days in county jail.  Under these circumstances, it is not likely defendant would have risked going to trial, being convicted, and facing more time in custody, as well as the same immigration consequences.

We conclude that defendant failed to meet his burden of establishing by a preponderance of the evidence that his plea counsel erred or that he (defendant) did not understand the immigration consequences of the plea.  Because defendant failed to meet his burden of proof, the trial court properly denied the section 1473.7 motion.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____<br>J.

We concur:

CODRINGTON _____<br>Acting P. J.<br>RAPHAEL _____<br>J.

20